UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LAURENE KLEMENT,

                    Plaintiff,

            V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                  Defendant.

_____

**REPORT AND
RECOMMENDATION**

08-CV-640
(LEK/VEB)

## I. INTRODUCTION

In October of 2004, Plaintiff Laurene Klement filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under the Social Security Act.  Plaintiff alleges that she has been disabled since June of 2002, due to depression and various physical impairments.  The Commissioner of Social Security denied Plaintiff's application.

Plaintiff, represented by counsel, commenced this action on June 18, 2008, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1).  Plaintiff seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On March 12, 2009, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 15).

## II. BACKGROUND

The relevant procedural history may be summarized as follows.  In October of 2004, Plaintiff applied for DIB and SSI benefits, alleging that she had been disabled since June 4, 2002. (T[1] at 20, 58).  The Commissioner initially denied the application on January 20, 2005.  (T at 20, 35-39).  Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") on February 25, 2005. (T at 20, 40).  On May 30, 2006, a hearing was held before ALJ Thomas P. Zolezzi.  (46, 639-679).  Plaintiff, represented by counsel, appeared and testified at the hearing.   (T at 20, 639).   On October 17, 2006. the ALJ held a supplemental hearing, at which the testimony of a vocational expert was elicited via telephone conference. (T at 683).

On December 12, 2006, the ALJ issued a written decision denying Plaintiff's applications for benefits.  (T at 20-31). Thereafter, Plaintiff requested review by the Appeals Council.  (T at 11, 14-16).  The Appeals Council denied Plaintiff's request for review on May 8, 2008. (T at 4-7).

Plaintiff commenced this action by filing  a Complaint on June 18, 2008. (Docket No. 1).  Plaintiff filed a Brief in support of her Complaint on December 17, 2008.  (Docket No. 13).  The Commissioner filed a Brief in opposition on January 29, 2009. (Docket No. 15).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No.7).

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

For the reasons that follow, it is recommended that this case be REMANDED for further proceedings consistent with this Report and Recommendation.

## III. DISCUSSION

### A.   Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the

court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ determined that Plaintiff met the insured status requirements through September 30, 2005. (T at 22). The ALJ also found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 4, 2002. (T at 22). The ALJ determined that Plaintiff has one impairment considered "severe" – a mental impairment. (T at 23, 27). The ALJ determined that the combined effect of Plaintiff's impairments, including her mental impairments and substance abuse, met § 12.04 of the Listing of Impairments in Appendix I of the Regulations (the "Listings"). (T at 23-26).  However, the ALJ noted that without her substance abuse, Plaintiff would not have an impairment or combination of impairments that meets or medically equals the Listing.  (T at 26).

The ALJ determined that, absent substance abuse, Plaintiff would have the residual

functional capacity to perform "light" work.  (T at 27). Specifically, the ALJ found that Plaintiff is able to lift no more than twenty (20) pounds, walk/stand for approximately six (6) hours and sit for at least six (6) hours in an eight (8) hour work day. (T at 27).  The ALJ determined that because of Plaintiff's history of asthma she should not work around "concentrated gases, fumes, odors, smoke, dust, or poor ventilation."  (T at 27).

However, the ALJ also found that even without substance abuse, Plaintiff has a severe mental impairment "that limits her to performing simple entry level work" in a "low stress environment."  (T at 27).   The ALJ stated that Plaintiff should only have occasional, not frequent, interaction with the public and co-workers.  (T at 27).  The ALJ noted that there should "be little or no change in her work environment or setting."  (T at 27).  Even without substance abuse, the ALJ found that Plaintiff would be unable to perform past relevant work as a clerk, floral designer, and telemarketer.  (T at 29).

 The ALJ noted that Plaintiff, born August 1, 1960, was a "younger individual" at the time of his decision, and she has a high school education and is able to communicate in English.  (T at 30).   The ALJ found that if Plaintiff stopped her substance abuse, "considering the claimant's age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform."  (T at 30). The ALJ further determined that her substance abuse was a "contributing factor material to the determination of disability." (T at 31).  Accordingly, the ALJ concluded that Plaintiff is not under a "disability," as that term is defined under the Act, and denied the application for benefits. (T at 31).

As noted above, the ALJ's decision became the Commissioner's final decision on May 8, 2008, when the Appeals Council denied Plaintiff's request for review.  (T at 4-7).

**2.      Plaintiff's Claims**

Plaintiff contends that the Commissioner's decision should be reversed.  She offers two (2) principal arguments in support of that position.  First, Plaintiff asserts that the ALJ erred in finding that drug and/or alcohol use was a contributing factor material to a finding of disability.  Second, Plaintiff argues that the ALJ erred in finding that her impairments did not meet or medically equal a listed impairment absent substance abuse.

The Court will discuss both arguments in turn in turn.

**a.      Contributing Factor**

The Social Security Act establishes that "an individual shall not be considered disabled ... if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J).

Thus, "substance abuse becomes material to a benefit determination only after the claimant is found to be disabled" according to the sequential analysis. Roy v. Massanari, No. 3:01-CV-306, 2002 WL 32502101, at *2 n. 3 (D. Conn. June 12, 2002); see 20 C.F.R. § 404.1535(a).

The "plain text of the regulation" requires the ALJ to first use the standard sequential analysis to determine whether the claimant is disabled, "without segregating out any effects that might be due to substance use disorders." Day v. Astrue, No. 07-CV-157, 2008 WL 63285, at *5 (E.D.N.Y. Jan 3, 2008) (quoting Brueggemann v. Barnhart, 348 F.3d 689, 695 (8th Cir.2003)); see e.g., Orr v. Barnhart, 375 F.Supp.2d 193, 201 (W.D.N.Y. 2005)

(remanding to require the ALJ "to consider the ill effects that plaintiff's alcoholism had on her impairments and limitations" when determining the issue of disability and "only after finding that plaintiff is disabled, determine which impairments would remain if plaintiff stopped using alcohol").

Once the initial threshold disability determination is made, the ALJ then considers "whether the individual would continue to meet the definition of disability even if drug and/or alcohol use were to stop." SSR 82-60.  If the claimant would still meet the definition even if the substance abuse were to end, then substance abuse is not a contributing factor material to the disability determination.  Id.   "The drug addiction and alcoholism requirements are imposed only where (1) the individual's impairment(s) is found disabling and drug addiction and/or alcoholism is a contributing factor material to the determination of disability, and (2) the same impairment(s) would no longer be found disabling if the individual's drug addiction or alcoholism were eliminated, as, for example, through rehabilitation treatment."  Id.

The claimant bears the burden of proving that substance abuse is not a contributing factor material to the disability determination.  White v. Comm'r of Soc. Sec., 302 F.Supp.2d 170, 173 (W.D.N.Y.2004).

### i.      Arguments of the Parties

Plaintiff argues that the ALJ erred by concluding that her substance abuse was a contributing factor material to the disability determination.  In support of this argument, she points to disability reports prepared by Dr. Irwin Hassenfeld, one of Plaintiff's treating psychiatrists.  In an October 2005 disability report, Dr. Hassenfeld diagnosed Plaintiff as suffering from major depression, bipolar disorder, alcohol dependence "in full sustained

remission," and cocaine dependence in "early full remission." (T at 373). Dr. Hassenfeld opined that Plaintiff was "[n]ot recommended for employment related activities at this time." (T at 374). Dr. Hassenfeld had reached similar conclusions in June 2005. (T at 378-79).

Plaintiff also points to an October 2006 report, Dr. Hassenfeld opined that Plaintiff "is persistently and severely mentally ill," but again indicated that her alcohol and cocaine dependence were in full sustained remission. (T at 513-14). Dr. Hassenfeld made similar findings in an April 2007 report, which was submitted to the Appeals Council following the ALJ's decision. (T at 637-38).

Plaintiff contends that Dr. Hassenfeld's findings undermine the ALJ's determination because Dr. Hassenfeld concluded that Plaintiff could not engage in employment-related activities even when her alcohol and drug dependence were in remission. Further, Plaintiff argues that there is insufficient evidence that Plaintiff was engaged in substance abuse during the relevant time period, particularly given Dr. Hassenfeld's statements that Plaintiff's substance abuse problems were in remission.

Defendant argues that the ALJ's decision is supported by evidence that Plaintiff needed supportive housing due to repeated relapses of substance abuse. To wit, she was discharged from the Equinox Counseling Center in May 2004 after a positive drug test. (T at 221). The Capital District Psychiatric Center's Schenectady County Clinic declined to admit Plaintiff in July 2005 due to a positive drug test. (T at 347). Defendant also points to clinical notes prepared in July 2006 by Amanda McDade, a social worker involved with Plaintiff's treatment, which indicated that staff at her supportive housing program (referred to as "Lighthouse") was concerned that she was abusing prescription medication. (T at 605-607). Defendant contends that this evidence "demonstrates" that Plaintiff's substance

9

abuse continued through much of the time period covered by the ALJ's December 2006 decision.

## ii.    Errors in ALJ's Decision

This Court finds that a remand is warranted in this case.  The ALJ relied upon Dr. Hassenfeld's June 2005 and October 2005 assessments in support of his determination, noting that he found those assessments to be of "great value." (T at 24-25).  In his June 2005 report, Dr. Hassenfeld opined that Plaintiff was "not recommended to engage in employment related activities at this time," notwithstanding the fact that her alcohol and cocaine dependence were in "full sustained remission." (T at 378).  Dr. Hassenfeld indicated that Plaintiff was "very limited" due to prior attempts at alcohol/drug abstinence and "moderately limited" as a result of loss of housing due to addiction, loss of employment due to addiction; and because her pattern of addiction interfered with her activities of daily living. (T at 374).  Dr. Hassenfeld's October 2005 report contains substantially the same findings.  (T at 378).

It is clear that the ALJ read Dr. Hassenfeld's reports as indicating that Plaintiff's limitations were directly related to her recent substance abuse.  (T at 24).  The ALJ explicitly stated that he believed Dr. Hassenfeld's assessment that Plaintiff could not maintain employment was "based on [her] substance abuse [addiction]." (T at 25).

A reading of the June 2005 and October 2005 reports arguably supports the ALJ's assessment in this regard.  However, Dr. Hassenfeld's subsequent disability report in October 2006 calls the ALJ's assessment into question.  In that report, Dr. Hassenfeld again noted that Plaintiff's substance abuse problems were in "full sustained remission." (T at 513).  He further concluded that Plaintiff had no limitations resulting from recent

10

addictive behavior. (T at 514).  Notwithstanding the foregoing, Dr. Hassenfeld concluded that Plaintiff was "persistently and severely mentally ill" and opined that "[a]ll work activities [were] contradicted." (T at 514).

The ALJ addressed Dr. Hassenfeld's October 2006 report (T at 28), but made no attempt to account for the fact that the October 2006 report appears to substantially undermine the ALJ's findings based upon the June 2005 and October 2005 reports.  In other words, the ALJ relied upon the earlier reports in support of his determination that Plaintiff's limitations were based upon her substance abuse addiction.  However, Dr. Hassenfeld's October 2006 report makes clear that he believed Plaintiff was still unable to work, notwithstanding the fact that her substance abuse problems were in full sustained remission and she was no longer limited by addictive behavior.  This strongly suggests that, at least in Dr. Hassenfeld's assessment, Plaintiff's mental impairments remained disabling even after she stopped abusing drugs and alcohol.  The ALJ did not attempt to reconcile or explain this apparent contradiction, except to note that Dr. Hassenfeld's October 2006 report "coincides" with the time period when Lighthouse staff suspected Plaintiff of prescription medication abuse. (T at 28).

This finding is problematic in several respects.  First, no direct evidence of the alleged prescription abuse was submitted to the ALJ.  Second, the clinical notes were made in July of 2006, several months prior to Dr. Hassenfeld's report and, thus, do not actually "coincide" with that report. (T at 605).  Third, the notes indicated that Dr. Hassenfeld was not concerned about the allegations because he had prescribed the medications in question. (T at 606).  Fourth, Plaintiff was interviewed about the incident and explained that she stored medications at a friend's house because she did not want the residence staff

11

monitoring and managing her prescriptions. (T at 603-604).[4]

In sum, as noted above, Dr. Hassenfeld's October 2006 report provided a strong indication that he believed Plaintiff's impairments were disabling even absent substance abuse. This assessment from Plaintiff's treating psychiatrist needed to be dealt with clearly and completely. The ALJ's passing reference to a hearsay allegation of prescription abuse (which Dr. Hassenfeld himself may have considered incredible) was plainly insufficient in this regard.

Moreover, the ALJ relied upon Dr. Hassenfeld's assessments with respect to Plaintiff's functional limitations without making any apparent attempt to reconcile those assessments with Dr. Hassenfeld's overall disability determination. In his October 2006 report, Dr. Hassenfeld opined that Plaintiff had no limitations with regard to her ability to understand and remember instructions; carry out instructions; make simple decisions; maintain socially appropriate behavior without exhibiting behavior extremes; and maintain basic standards of personal hygiene and grooming. (T at 513). Dr. Hassenfeld indicated that he was unable to assess whether Plaintiff could function in a work setting at a consistent pace, but found Plaintiff to be "moderately limited" in terms of her ability to maintain attention/concentration and interact appropriately with others. (T at 513).

The ALJ relied on Dr. Hassenfeld's functional limitation assessments in support of his conclusion that Plaintiff was only moderately limited absent her substance abuse. Indeed, the ALJ found that Dr. Hassenfeld's findings in this regard, coupled with his determination that Plaintiff had no limitations related to her addictive behavior, were of

---

[4]As discussed below, additional evidence submitted to the Appeals Council casts further doubt upon this allegation.

"great significance." (T at 28).

However, while accepting this portion of Dr. Hassenfeld's October 2006 report, the ALJ made no meaningful attempt to reconcile the functional limitation findings with Dr. Hassenfeld's overall assessment that Plaintiff was "persistently and severely mentally ill" and that "[a]ll work activities" were "contradicted." (T at 514). This finding was clearly inconsistent with the moderate functional limitations described by Dr. Hassenfeld. The ALJ was not at liberty to accept the functional limitation findings without explaining how he reconciled those findings with the overall assessment. See Sutherland v. Barnhart, 322 F.Supp.2d 282, 289 (E.D.N.Y.2004) (citing Lopez v. Sec'y of Dept. of Health & Human Servs., 728 F.2d 148, 150-151 (2d Cir.1984) ("It is not proper for the ALJ to simply pick and choose from the transcript only such evidence that supports his determination, without affording consideration to evidence supporting the plaintiff's claims.).

Under the circumstances, the ALJ should have further developed the record by contacting Dr. Hassenfeld for clarification regarding the apparent inconsistency between the mild/moderate functional limitations and the overall assessment of persistent and severe mental illness. See 20 C.F.R. § 404.1512(e)(1) (providing Commissioner must re-contact the claimant's treating physician when the physician's report "contains a conflict or ambiguity that must be resolved. . . . "); see also 20 C.F.R. § 416.912(e); Colegrove v. Comm'r of Soc. Sec., 399 F.Supp.2d 185, 196 (W.D.N.Y.2005)(noting that ALJ has an "affirmative duty to develop the record and seek additional information from the treating physician, sua sponte, even if plaintiff is represented by counsel" to determine upon what information the treating source was basing his opinions).

On remand, the Commissioner should elicit a further explanation from Dr.

13

Hassenfeld regarding (1) the extent and limiting effect(s) of Plaintiff's mental impairments during the relevant time period and (2) whether Plaintiff's substance abuse continued to be a material contributing factor with respect to her limitations throughout that period.

In addition, there is some authority for the proposition that "where it is not medically possible to separate out the effects of mental illness and substance abuse, an award of benefits should be made." Mitchell v. Astrue, No. 07 Civ. 285, 2009 WL 3096717, at *24 n. 18 (Sep't 28, 2009)(collecting cases).  In other words, "[i]n colloquial terms, on the issue of the materiality of alcoholism, a tie goes to" the claimant. Brueggemann v. Barnhart, 348 F.3d 689, 693 (8th Cir. 2003).  The courts applying this rule have generally cited to an internal agency reference known as "Social Security Advisory Service DAA Q & A Teletype, dated Aug. 30, 1996" or "No. EM-96200."  On remand, the Commissioner should consider whether this rule remains effective and, if so, consider whether it applies to this particular case.

### iii.    Appeals Council's Errors

The Appeals Council shall consider "new and material" evidence if it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b); see also § 416.1470(b); Perez v. Chater, 77 F.3d 41, 45 (2d Cir.1996). The Appeals Council "will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b); see § 416.1470(b)."

To obtain a review of the additional evidence, the claimant must establish that "the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time

14

period for which benefits were denied and probative." <u>Sergenton v. Barnhart</u>, 470 F.Supp.2d 194, 204 (E.D.N.Y.2007) (citing <u>Lisa v. Sec'y of Health & Human Servs.</u>, 940 F.2d 40, 43 (2d Cir.1991)).

Evidence is "material" if there is "a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently." <u>Id.</u> If the Appeals Council fails to consider new, material evidence, "the proper course for the reviewing court is to remand the case for reconsideration in light of the new evidence." <u>Shrack v. Astrue</u>, 608 F.Supp.2d 297, 302 (D.Conn.2009).

This Court finds that the Appeals Council in fact erred when it determined that new evidence submitted by the Plaintiff was insufficient to trigger review of the ALJ's decision. As noted above, the ALJ referenced and credited allegations that Plaintiff abused prescription drugs in July of 2006. (T at 25, 28).  Clinical notes prepared by Amanda McDade, a social worker, provided the only evidence concerning these allegations.  Plaintiff submitted a letter to the Appeals Council dated June 27, 2007, signed by Ms. McDade and Dr. Hassenfeld, which stated that Plaintiff had been treating with the Ellis Mental Health Outpatient Clinic since October 13, 2005 and that "[a]t no time" during her treatment had "substance use been suspected." (T at 636).  The letter referenced drug tests (which were negative for substance abuse) in February and March 2007.  Although these tests occurred after the ALJ rendered his decision, McDade and Hassenfeld stated that testing would have been ordered earlier "if there were any indications of possible use." (T at 636).

Certainly, this assessment from Plaintiff's treating psychiatrist and social worker cast doubt on the allegations of prescription abuse.  The fact that McDade, the person who made the clinical notes relied upon by the ALJ, joined in the assessment that no substance

abuse had occurred since 2005 provides a particular reason for doubting whether the prescription abuse allegations were accurate.

In light of the heavy emphasis given the prescription abuse allegations by the ALJ, the Appeals Council should have, at a minimum, provided an explanation for its decision not to review the ALJ's decision in light of the additional evidence concerning substance abuse submitted by Plaintiff's treating psychiatrist and social worker.   The summary statement that the additional information presented by Plaintiff did "not provide a basis" for changing  the ALJ's decision is insufficient.  Indeed, the lack of an explanation frustrates meaningful review by this Court and provides the Plaintiff with no material information to explain why the additional evidence was rejected. See Stadler v. Barnhart, 464 F. Supp.2d 183, 188 (W.D.N.Y. 2006) (concluding that the Appeals Council erred by "fail[ing] to follow the requirements of the Commissioner's regulation in summarily concluding, without 'good reasons' stated, that the new evidence submitted by plaintiff's counsel to it was insufficient to disturb the ALJ's determination") (quoting Rice v. Barnhart, No. 03-CV-6222, 2005 WL 3555512, at *13 (W.D.N.Y. Dec. 22, 2005)).

In addition, Plaintiff also submitted a disability form completed by Dr. Hassenfeld in April 2007.  Consistent with his October 2006 findings, Dr. Hassenfeld concluded that Plaintiff had no limitations resulting from recent addictive behavior, but nevertheless had "persistent mental illness" and was unable to work. (T at 638).  Although this evaluation post-dates the ALJ's decision, it is consistent with the pre-hearing reports and further calls into question the ALJ's reliance on Dr. Hassenfeld's earlier reports in support of the conclusion that Plaintiff's substance abuse is a material contributing factor to the disability determination.  See Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir.1991) (recognizing that

16

post hearing medical examinations may be admitted under 20 C.F.R. § 404.970(b) when these examinations assist in understanding a claimant's pre-hearing disability); Dousewicz v. Harris, 646 F.2d 771, 774 (2d Cir.1981) (same).

Again, the Appeals Council was obligated to offer something more substantial than its summary explanation for deciding not to review the ALJ's decision in light of this further indication that Plaintiff's treating psychiatrist concluded that she was disabled due to her mental impairments even while her alcohol and cocaine dependence were in full sustained remission. (T at 637).

On remand, the Commissioner should reconsider the appropriateness of assigning "great value" to the July 2006 allegations of prescription abuse given the assessment provided by Plaintiff's treating psychiatrist and social worker that there had been no indications of substance abuse since October 2005. The Commissioner should also reconsider the ALJ's contradictory reliance on Dr. Hassenfeld's reports, while still finding that she was not disabled, given the repeated indications that Dr. Hassenfeld believed Plaintiff's mental impairments were severe and disabling even while her substance abuse was in full sustained remission.

### b.    Listing § 12.04

"The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925(a). If a claimant's impairment or combination of impairments meets or equals a listed impairment, the evaluation process is concluded and the claimant is considered disabled without considering the claimant's age, education, or work experience. 20 C.F.R. § 416.920(a)(4)(iii).

17

The claimant bears the burden of establishing that his or her impairments match a Listing or are equal in severity to a Listing.  See Naegele v. Barnhart, 433 F. Supp.2d 319, 324 (W.D.N.Y. 2006) ("It must be remembered that plaintiff has the burden of proof at step 3 that she meets the Listing requirements.").

To show that an impairment matches a Listing, the claimant must show that his or her impairments meet all of the specified criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990); 20 C.F.R. § 416.925(d). If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. Sullivan, 493 U.S. at 530. To satisfy this burden the claimant must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926(b). Abnormal physical findings "must be shown to persist on repeated examinations despite therapy." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B). Further, the medical reports must indicate physical limitations based upon actual observations and/or clinical tests, rather than the claimant's subjective complaints. Id.

To have an impairment that meets or medically equals the § 12.04 Listing (Affective Disorders) in Appendix 1 of the Regulations, the claimant's impairment(s) must meet the criteria of paragraphs A and B, or paragraph C of § 12.04.

A claimant satisfies paragraph A of § 12.04 if he or she has been diagnosed with a "disturbance of mood, accompanied by a full or partial manic or depressive syndrome." § 12.04(A).  Generally, the medical evidence must demonstrate the persistence of certain symptoms of the manic or depressive syndrome, e.g. sleep disturbance, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, and/or thoughts of

suicide.

In addition to meeting §12.04A, the claimant must also satisfy the criteria set forth in Paragraph B or C of §12.04.  Paragraph B "requires the ALJ to rate the degree of the claimant's functional limitation in four specific areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." Manning v. Astrue, No. 07-CV-0327, 2009 WL 604900, at *3 (W.D.N.Y. Mar. 9, 2009). "Simply stated, in order to satisfy the Paragraph B criteria, the claimant must demonstrate at least two of the following: marked restriction of activities of daily living; or marked difficulties in maintaining social functioning; or marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration." Id. (citing Paratore v. Comm'r of Social Sec. Admin., 05-CV-1356, 2008 WL 541156, at *5 (N.D.N.Y. February 25, 2008)).

Under § 12.04 (C), a claimant would automatically meet the Listing if there was documented evidence of any of the following: "(1) Repeated episodes of decompensation, each of extended duration; or (2) A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement."

In this case, the ALJ concluded that Plaintiff's impairments met §12.04. (T at 23). Specifically, the ALJ determined that "when considering the effects of the claimant's substance abuse, the claimant meets the criteria listed under 12.04C, with her repeated episodes of decompensation requiring the claimant to need the supportive housing living

19

arrangements." (T at 23).  However, the ALJ further found that Plaintiff would not meet the Listing criteria if her substance abuse stopped. (T at 26).

This conclusion should be re-evaluated for the reasons stated above.  Evidence submitted by Plaintiff's treating psychiatrist indicated that her impairments may continue to be disabling even when she abstains from substance abuse.  This evidence should be clarified and amplified.  If the treating psychiatrist's assessment is not afforded controlling weight, the Commissioner should clearly state the reasons underlying such a decision.

### c.    Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).  Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

### IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be DENIED, that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner pursuant to sentence four

of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

Victor E. Bianchini
United States Magistrate Judge

Dated:   October 22, 2009

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE**

21

**OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge

October 22, 2009